FILED'06 AUG 11 10:01USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | No.   CV 05-1796-PA |
| v. | ) | CR 03-505-01-PA |
| | ) | |
| SCOTT LEON MILLER, | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**PANNER, District Judge:**

Scott Leon Miller brings this 28 U.S.C. § 2255 motion.  He seeks to withdraw his guilty plea to being a felon in possession of a firearm, and asks the court to vacate the sentence imposed. For the reasons that follow, the motion is denied.

## Background

On March 8, 2004, Miller pled guilty to one count of being a felon in possession of a firearm.  Miller allegedly fired at least one shot in downtown Portland.  He was soon taken into custody.  A .44 caliber handgun was found in Miller's waistband. The gun contained four live rounds, and one discharged casing.

At the time Miller committed the instant offense, he was on supervised release following his conviction for Credit Card Fraud.  He had already violated his supervised release on

1 - OPINION AND ORDER

numerous occasions by submitting urine samples that tested positive for methamphetamine or amphetamine.  The Probation Department reported that Miller had also missed a number of random urinalysis tests.  On November 27, 2001, Miller's supervised release was revoked, for these repeated violations, and he was sentenced to serve 9 months in prison, followed by a 27-month term of supervised release.  Following his release from custody, Miller continued to have difficulties complying with the conditions of supervised release.  Home detention was tried, followed by an inpatient drug treatment program.  The instant arrest occurred shortly after his release from that program.

Miller also has prior convictions for Assault IV and for Unlawful Use of a Weapon (a felony).  He previously had been indicted (but not yet tried for) attempted robbery, Assault II, and Failure to Appear.  The presentence report also noted other alleged violent acts in his past, including domestic violence, armed robbery, kidnaping, and menacing.  Firearms were involved in many of the foregoing incidents.  A detention report also indicated that Miller had fled to Mexico, and hidden for over a year, to evade arrest in the credit card case, and had also fled from police in California at high speed in a car, almost hitting a pedestrian.

Given this history, any sentencing judge would have grave concerns about Miller again being found in possession of a loaded gun, let alone allegedly firing that weapon in downtown Portland. His poor performance on supervised release also did not bode well for Miller at sentencing.  Miller was also facing numerous state court charges regarding the downtown shooting incident.

Miller's attorney, Gerald Needham, negotiated a plea agreement. Miller would plead guilty to the felon in possession charge, and admit he had violated his supervised release. In return, the government would recommend a low-end sentence of 37 months on the felon in possession charge. The statutory maximum sentence, which the court could have elected to impose, is 120 months. The government also agreed to recommend that any term of imprisonment for the latest supervised release violation be served concurrent with the 37 month sentence, rather than the customary consecutive sentence.

Miller was expressly cautioned, and he acknowledged, that this court was not bound by that recommendation. The Probation Department, which was not a party to the plea agreement, recommended a 46-month sentence on the felon in possession charge, and a 10-month consecutive sentence for the latest supervised release violation, for a total sentence of 56 months in custody.

I imposed a low-end sentence of 37 months for the felon in possession charge, and a 10 month consecutive term for the supervised release violation, for a total sentence of 47 months in custody. That was more than Miller wanted, but less than the Probation Department was recommending.

While not in the written plea agreement, Miller also asserts there was an understanding that all state law charges pending against him in connection with this incident would be dismissed (and they reportedly were).

Miller did not appeal (nor could he, under the terms of the plea agreement). In November 2005, he filed this § 2255 motion.

3 - OPINION AND ORDER

## Discussion

To be timely, this motion had to be filed within one year after Miller's conviction became final.  28 U.S.C. § 2255.  The motion was filed almost six months too late.  Miller argues that his late filing should be excused because the court failed to inform Miller that he was entitled to a court-appointed attorney for a direct appeal.  Had he known this, Miller now declares, he would have filed a direct appeal from his sentence.

This argument fails for numerous reasons.  First, Miller was not entitled to a court-appointed attorney for a § 2255 motion.[1] Second, Miller's plea agreement waived any right to file a direct appeal.  Third, the transcript of the sentencing hearing confirms that, after imposing sentence, I advised Miller:

> You have a right to appeal from the sentence imposed under certain circumstances.  Notice of appeal must be filed within ten days of the entry of judgment.  You may apply to the clerk for relief to appeal in forma pauperis, if you can't afford the costs of an appeal. If you request, the clerk will file a notice of appeal on your behalf.

Miller never made any such request.  Fourth, Miller was represented by a court-appointed attorney at sentencing, yet does not contend he ever asked this attorney to file a notice of appeal, or inquired whether he could have counsel appointed to represent him on appeal.  Fifth, Miller has considerable experience with the criminal justice system, and the process of obtaining court-appointed counsel.  If he had wanted an attorney, he surely would have requested one.  Lastly, the issue is not

---

[1]  On occasion, an attorney may offer to represent a movant at no charge, but that is different from a right to such representation.

4 - OPINION AND ORDER

whether Miller would have filed a direct appeal, but rather his failure to file a § 2255 motion within the one year allotted by statute.

In any event, Miller's § 2255 motion lacks merit. Miller contends his attorney was ineffective because the attorney failed:

> to investigate, examine and subpoena Assistant United States Attorney to testify under oath under cross-examination before plea entry and advised petitioner of the government's intent to seek enhancement of his sentences' base offense level of 1 to a base offense level of 17 based on unindicted and unoathed out-of-court aggravating factors of Ex-Con in Possession of a Weapon, Carrying a Concealed Weapon, Possession of a Loaded Firearm Within City Limits, Unlawful Use of a Weapon, Discharging a Firearm Within City Limits, Reckless Endangering, Criminal Mischief II and unconstitutional prior convictions without investigation and examination of evidence of proof (facts) of prior conviction as required by due process
> . . . .

Defense counsel had no right to cross-examine the Assistant United States Attorney, nor any valid basis for doing so. Consequently, his failure to do so was not error. Miller's argument also presumes that the base offense level was a "1" but that the dismissed state court charges somehow increased that base offense level to 17. He is mistaken.

With limited exceptions not applicable here, the lowest base offense level possible for a felon in possession conviction is level 12 (not 1). U.S.S.G. 2K2.1(a)(7). In Miller's case, the base level was 20 because he committed this offense after having previously been convicted of a felony meeting the definition of a "crime of violence." U.S.S.G. 2K2.1(a)(4)(A). For purposes of

5 - OPINION AND ORDER

this guideline, the term "crime of violence" includes, among other things, felony offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Attempting to commit such an offense, or aiding and abetting the commission, is sufficient. Id., cmt. 1.

In 1997, Miller was convicted of Unlawful Use of a Weapon, a felony, in violation of ORS 166.220(1)(a). That statute read (in 1997):

(1) A person commits the crime of unlawful use of a weapon if the person:

(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015; or

This is sufficient to meet the definition of crime of violence.[2] Consequently, Miller's base offense level was properly fixed at level 20. He then received a 3-level credit for acceptance of responsibility. This resulted in a Total Offense Level of 17, which is precisely what the plea agreement contemplated.

Miller also argues that "unconstitutional prior convictions" were used against him. He has not pointed to any conviction that has been declared unconstitutional.

Miller argues that if the government wishes to use a prior conviction to enhance his sentence, it becomes a fact that the government must charge in the indictment and prove to a jury.

---

[2]     The actual facts of the case, which involved preparations for an armed robbery, would not alter this conclusion.

6 - OPINION AND ORDER

The Supreme Court has held otherwise. <u>Almendarez-Torres v.</u> <u>United States,</u> 523 U.S. 224, 247 (1998). Although several Justices have urged that <u>Almendarez-Torres</u> be reconsidered, the Ninth Circuit has instructed district courts to continue to follow <u>Almendarez-Torres</u> until such time, if any, as the Supreme Court directs otherwise. <u>United States v. Weiland</u>, 420 F.3d 1062, 1079 n.16 (9th Cir. 2005).

Regardless, defense counsel had no reason to contest this issue. Miller readily admitted the prior convictions. It also would have been an easy matter for the prosecutor to obtain a certified copy of the judgment of conviction. Furthermore, one of the two prior felony convictions was the felony for credit card fraud. I accepted Miller's guilty plea in that case, and imposed sentence on him. He had again appeared before me after violating the terms of his supervised release in that case. Miller can hardly deny the existence of the credit card fraud conviction. A wise attorney does not contest matters that cannot seriously be disputed.

Miller argues that his attorney should have challenged the indictment as "defective" because it did not "give notice" of facts that might be used to enhance his sentence. There is no requirement that the indictment do so. <u>Almendarez-Torres,</u> 523 U.S. at 247; <u>United States v. Booker</u>, 543 U.S. 220 (2005) (making Guidelines advisory rather than mandatory adequately redressed the violation).

Miller next complains that the dismissed state court charges were somehow used to enhance his sentence, and this somehow deprived him of the benefit of the plea bargain. He is mistaken,

7 - OPINION AND ORDER

both because such a provision was not part of his plea bargain (the charges were dismissed after the federal indictment was filed, and prior to the plea bargain), and also because the state court charges were not used to "enhance" his sentence.

To be sure, the court was made aware of the circumstances surrounding his arrest for felon in possession of a firearm, just as the court was made aware of his other prior arrests and supervised release violations, that he had a loving wife and child, his education and relevant medical history, and other aspects of his life that either party, or the Probation Department, deemed appropriate to present to the court. These are all factors that a court considers in evaluating the person who is to be sentenced and deciding what sentence is appropriate. However, that is very different from "enhancing" his sentence under the Guidelines or by statute.

Miller also states that he thought his Criminal History Category should be I, rather than IV. This appears to be based on his mistaken contention that the court cannot consider his past criminal convictions in imposing sentence. It most certainly can. I also note that Miller could have, but didn't, argue this point during the sentencing proceedings.

Prior to his sentencing, Mr. Miller wrote me a heartfelt letter in which he accepted responsibility for his past behavior, and promised to do better in the future. He then added,

> I'm not a kid anymore, and I will stand up like an adult and face this. It's time to take responsibility and then do whatever it takes to grow and move on . . . . Whatever happens to me, I will do whatever it takes to learn from my mistakes and get through this with a positive attitude, so that when I'm done I will never have to go through this

again.  Life is only what I make of it, and I will make something of mine, Lord willing.

I have taken the time to address his arguments on the merits, rather than simply dismissing them as time-barred, in the hope that Mr. Miller will re-dedicate himself to the aspirations he stated so eloquently in his sentencing letter.

### Conclusion

Defendant's § 2255 motion (docket # 24) to Vacate or Correct Sentence is denied.

IT IS SO ORDERED.

DATED this ___*10*___ day of August, 2006.

OWEN M. PANNER
UNITED STATES DISTRICT JUDGE

9 – ORDER